ELI S. PERKINS, executor &c. of Stillman Perkins, deceased, *vs.* SYLVIN PERKINS, administrator &c. of Almon Perkins, deceased.

An appraisal, by fence viewers, of the expense of making, by one party, of that portion of a division fence which they have decided another party shall maintain, is not necessary to enable the former to maintain an action for the recovery of such expense. Such expense may be proved by witnesses who know, or can judge, what it was.

Where a person chooses to let his land "lie open to a public common," as authorized by the act of 1860, to avoid maintaining a just proportion of the division fence between his land and that of an adjoining proprietor, he must do what amounts to a license to the people of the town to go upon it, and allow their cattle to feed upon it, without being trespassers, until he revokes such license and builds, or pays the expense of building, his just proportion of such division fence.

Before a party can claim that he has chosen to let his land "lie open to a public common," he must have given the adjoining owner, or the fence viewers, notice that he has so chosen; otherwise he will be liable to the adjoining owner for the expense of building his proportion of the division fence.

The facts that he has never fenced his land, and has only used it for a sugar bush, and as a wood and timber lot, will not establish that he has elected to let the same lie open to a public common.

STILLMAN PERKINS sued Almon Perkins in a justice's court, and recovered $25 damages for making, as was claimed, the latter's just proportion of a division fence, on a line between lands owned by the parties, which adjoined. The plaintiff's land was cleared and improved. That of the defendant, adjoining, had been used as a sugar bush and in taking wood from it, and "an acre or more," had been cleared.

The plaintiff had made and maintained the only fence there ever was on the line between the lands of the parties, previous to May, 1863; and the defendant had never used his adjoining land for any purposes other than those above specified.

On the 12th day of May, 1863, the plaintiff, by his son, notified the defendant to build his part of the division fence, when the defendant said "he had no fence to divide or build."

The defendant was then requested to choose a fence viewer to hear and determine the matters in dispute between the parties; but he neglected for more than eight days to make such choice, and the plaintiff then selected two fence viewers, who examined the premises and heard his allegations. The defendant was present at one time, but he declined to take any part in the proceedings. The fence viewers made their decision in writing, and it contained a description of the fence and of the proportion to be maintained by each party, and was forthwith filed in the office of the town clerk.

The defendant having neglected or refused for the period of one month, after a request from the plaintiff in writing, to make his proportion of the division fence that the fence viewers had decided he should maintain, the plaintiff built the same and then brought this suit, and recovered as above stated.

The defendant appealed from the justice's judgment to the Madison county court. During the pendency of that appeal the plaintiff died, and his executor, Eli S. Perkins, was substituted plaintiff in his stead. The county court affirmed the judgment of the justice, and the defendant again appealed to this court. After the appeal was brought to this court the defendant died, and his administrator, Sylvin Perkins, was substituted defendant in his place.

Other facts are sufficiently stated in the following opinion.

*C. Stebbins, Jr.* for the plaintiff.

*D. W. Cameron,* for the defendant.

*By the Court,* BALCOM, J. The defendant's objection to the plaintiff proving the expense of building the proportion of the division fence which the fence viewers decided he should maintain, except by the appraisal of such fence viewers, was properly overruled. It was settled in *Bronk* v. *Becker,* (17 *Wend.* 320,) that such an appraisal is not

necessary to entitle a party to maintain an action for the recovery of such expense; and that the same may be proved by witnesses who know or can judge what it was.

The main point relied upon by the defendant's counsel is that the defendant had the right to let his wooded land lie open, and could not be compelled by an adjoining owner to fence it.

The statute, controlling the question, was amended in 1860 so as to read as follows: "Where two or more persons shall have lands adjoining, each of them shall make and maintain a just proportion of the division fence between them, except the owner or owners of either of the adjoining lands shall choose to let such land lie open to a public common." (1 *R. S.* 353, § 30. *Laws of* 1860, *p.* 470.)

The words "to a public common," in this statute, were added in 1860. It is quite difficult to ascertain their meaning as they are used. Do they mean such a common as Boston common in the city of Boston; or such an one as there is in many of our villages, on which the people indiscriminately may walk or drive teams and cattle without being trespassers? It seems to me this is not their true meaning. For such commons are dedicated to public uses, and the original proprietors can never appropriate them exclusively to any private use. (*Trustees of Watertown* v. *Cowen,* 4 *Paige,* 510.)

But I am of the opinion those words so qualify the meaning of the statute, to which they are added, that when a person chooses to let his land "lie open to a public common," to avoid maintaining a just proportion of the division fence between such land and that owned by another person adjoining, he must do what amounts to a license to the people of the town to go upon it, and allow their cattle to feed upon it, without being trespassers, until he revokes such license and builds, or pays the expense of building, his just proportion of such division fence.

There is a wide difference between merely letting land "lie

Perkins *v.* Perkins.

open," and letting it lie open *to a public common;* and the legislature must have been of the opinion there was such a difference when they inserted the words "to a public common," in the statute above quoted.

When land merely "lies open," every body must keep off of it, and also prevent their cattle going upon it, or they will be trespassers. But if it lies open "to a public common," the law implies that the owner is willing that any person may go upon it, and that cattle in the neighborhood may feed upon it.

This is the most obvious and material meaning of these words as they are used in this statute, and they must be so construed.

But there is no evidence in the case to show that the defendant chose to let his land "lie open to a public common." He did not say he chose so to do, when he was requested to build his part of the division fence, or notify the fence viewers that such was his choice. The facts that he had never fenced his land and had only used it for a sugar bush and as a wood lot, and in taking timber therefrom, did not establish that he elected to let the same lie open *to a public common.* Before it could be held that such was his determination he must have given the plaintiff or the fence viewers notice that such was his position; and as he did not do that, he was liable to the plaintiff for the expense of building his proportion of the division fence. (1 *R. S.* 354, § 38.)

If the defendant's land had been entirely wild, and had never been occupied for any purpose, the question would have been up whether he could be compelled, under the statute, to maintain any portion of a division fence between such land and that of the plaintiff which was cleared and cultivated. But that question is not in the case. For one witness testified that he considered the defendant's land had been improved "by having been used as a sugar bush and getting wood," and that "an acre or more" of it was cleared.

And the defendant testified that he had "tapped trees" on the land for twenty years, and had used it "as a wood lot."

My conclusion is that the evidence showed the plaintiff was entitled to recover, and that the judgment of the county court, affirming that of the justice, should be affirmed, with costs.

Decision accordingly.

[Broome General Term, July 12, 1865. *Parker, Mason* and *Balcom,* Justices.]